UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMALRAJ GNANASIGAMANI,

    Plaintiff,

    v.

SGS TESTCOM, INC.,

    Defendant.

No. 2:15-cv-01931-KJM-EFB

ORDER

This case is before the court on plaintiff Amalraj Gnanasigamani's suit against former employer SGS Testcom, Inc., for retaliation and racial discrimination. Defendant moves for summary judgment. At hearing on defendant's motion, Richard Gray and Britney Torres appeared for defendant and Vicki Cody appeared for plaintiff. ECF No. 42. As explained below, the court GRANTS defendant's motion for summary judgment.

I.     PROCEDURAL HISTORY

Plaintiff filed the original complaint against SGS Testcom on June 24, 2015 and the operative First Amended Complaint on June 10, 2016. ECF Nos. 1, 19. The operative first amended complaint presents four claims: (1) retaliatory termination in violation of California Labor Code section 1102.5; (2) retaliatory termination in violation of California's False Claims Act, California Government Code section 12650, *et seq.*; (3) wrongful termination in violation of

1

public policy; and (4) unlawful racial discrimination in violation of 42 U.S.C. § 1981. *See generally* ECF No. 19. On December 30, 2016, defendant moved for summary judgment on plaintiff's claims. Mot., ECF No. 27.[1] Plaintiff opposed. Opp'n, ECF No. 28. Defendant replied. Reply, ECF No. 30.

II. FACTUAL BACKGROUND

SGS Testcom (SGS) is a national company with an office in Rancho Cordova, California. Christopher Marlow Decl. (Marlow Decl.) ¶ 2, ECF No. 27-6.[2] The Rancho Cordova office is responsible for providing information technology (IT) and help desk support to the California Bureau of Automotive Repair's (BAR) smog check program. *Id.* The program implements an initiative through which BAR records vehicle smog checks conducted in California. *Id.* ¶ 5. Smog check facilities throughout the state obtain certificates from the BAR, complete the checks, and report them back to the BAR. *Id.*

A. Plaintiff's Employment and Smog Program

Plaintiff began working at the Rancho Cordova office in 2005 as a contractor, became an ETL developer[3] in 2007, and then a database administrator in 2009 until he was terminated in 2014. UMF No. 2. As a database administrator, plaintiff was responsible for maintaining the IT system used to assess the smog check certificates, as well as continually monitoring and updating the IT system. Marlow Decl. ¶ 5. While a database administrator, plaintiff's supervisor was IT Operations Manager Christopher Marlow. UMF No. 3. Marlow's supervisor was Program Manager Michael Earl. UMF No. 4.

---

[1] On January 17, 2017, the court dismissed defendant's motion without prejudice for failure to meet and confer with plaintiff. ECF No. 29. Defendant filed a meet and confer certification on February 3, 2017, ECF No. 34, so the court relies on the previously filed motion.

[2] As explained below, Marlow is plaintiff's supervisor. Undisputed Material Fact (UMF) No. 3, ECF No. 28-3.

[3] Although the parties do not define the acronym, "ETL" appears to stand for "extract, transform, and load." An ETL developer extracts data from a data source, transforms it, and loads it into a database or data warehouse. *See* "Extract, transform, load," Wikipedia (last visited May 16, 2017).

2

In 2014, SGS began implementing a new software program to provide assistance to the BAR smog program. UMF No. 6. The new software system, referred to as "CalVis," allowed new smog check stations to be added to the SGS IT system database on a continual basis. Marlow Decl. ¶¶ 11, 12.

B. Plaintiff's Termination

Defendant contends from May to August 2014 plaintiff engaged in a series of actions warranting termination. On May 29, Michael Earl gave plaintiff a written warning for failing to address IT configuration errors over a weekend while plaintiff was an on-call database administrator. Pl.'s Dep. at 105:7–106:4. Plaintiff argues he could not address the configuration errors because he was addressing a parallel IT issue that same weekend. ECF No. 30–1 at 3. Plaintiff cites to no portion of the record establishing this disputed fact. In any event, plaintiff does not dispute he received the warning from Earl, and the court treats this fact as undisputed. *See Huynh v. J.P. Morgan Chase & Co.*, No. 06–0001, 2008 WL 2789532, at *15 (D. Ariz. July 17, 2008) (construing defendant's material fact as undisputed when plaintiff did not cite to record in support of a dispute).

Slightly more than two months later, on August 7, Chris Marlow asked plaintiff to restore SGS data that had been corrupted. Pl.'s Depo. at 134:10–139:1.[4] Marlow requested plaintiff find the corrupted data as soon as possible to avoid further corruption. *Id.* Plaintiff attempted to find the corrupted data, but he did so during a non-maintenance window, a time period when SGS handles a high volume of smog-reporting activity sent in from facilities throughout California. *Id.*; Marlow Decl. ¶ 8. Defendant contends plaintiff's conduct in this respect violated company policy and placed a "significant burden on the [CalVis] system," which led to an outage for five to ten minutes during peak hours. Marlow Decl. ¶ 14. Defendant points to evidence suggesting this outage hurt their reputation with the BAR. *Id.*

---

[4] Defendant provides excerpts of plaintiff's deposition, ECF No. 27-7, and the full deposition has been lodged with the court.

3

|  |  |
|---|---|
| 1 | On August 12, plaintiff made IT configuration adjustments, and he did so again |
| 2 | during a non-maintenance window. Pl.'s Dep. at 144:22–159:7. Defendant contends plaintiff's |
| 3 | conduct caused another system outage, which lasted thirty minutes during peak hours. Marlow |
| 4 | Decl. ¶ 15. |

On August 12, plaintiff made IT configuration adjustments, and he did so again during a non-maintenance window. Pl.'s Dep. at 144:22–159:7. Defendant contends plaintiff's conduct caused another system outage, which lasted thirty minutes during peak hours. Marlow Decl. ¶ 15.

Regarding the August 7 system crash, plaintiff disputes the scope of his contribution to the system outage. He points to his own deposition testimony suggesting any changes to the system could be, and often were, done at various times throughout the day with minimal impact. Pl.'s Dep. at 134:10–24. Plaintiff also points to evidence suggesting the outage occurred because the CalVis developer added two million rows of data to the system without notifying the plaintiff. PUMF No. 6; Pl's. Dep. at 147:14–18. Nothing in the record shows plaintiff received a warning for this conduct.

Regarding the August 12 system crash, plaintiff also disputes the scope of his contribution to the outage. He points again to his own deposition testimony suggesting the outage occurred after Michael Earl added thousands of smog check stations to the CalVis system without advance warning, which strained the efficiency of the program. Pl.'s Dep. at 139:1–25. And again, nothing in the record shows plaintiff received a warning for this conduct.

On August 12, 2014, after the system crash on that date, defendant terminated plaintiff's employment. Marlow Decl. ¶ 16. In a video conference with plaintiff, as plaintiff explains, Marlow told him BAR had concluded plaintiff did not know how to "manage [his] own application," which prompted his termination. Pl.'s Dep. at 132:21–25, 159:20–23; *see also* Marlow Decl. ¶ 17. Michael Earl participated in and concurred with the termination decision. UMF No. 10.

C. <u>Plaintiff's Evidence of Discrimination</u>

Plaintiff contends he was terminated under racially discriminatory circumstances. To support his contention, plaintiff first points to his own deposition testimony explaining SGS's three-warning then termination policy. Specifically, SGS had a practice of giving three warnings and terminating employment after seeing no improvement. Pl.'s Dep. at 221:14–18. Plaintiff

4

1 | was terminated after one warning. *Id.* On the other hand, plaintiff says a Caucasian co-worker continued to work at SGS despite three warnings. *Id.* at 221:1–223:4.

Defendant also points to plaintiff's deposition testimony, noting plaintiff's concession that SGS's termination policy included flexible disciplinary measures that are discretionary with management, and thereby not as rigid as plaintiff otherwise contends. *Id.* at 267:10–268:23. Defendant also notes plaintiff conceded he had no first-hand knowledge of the warnings his Caucasian co-worker purportedly received. *Id.* at 221:8–225:17.

III. <u>LEGAL STANDARDS</u>

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

IV. DISCUSSION

Defendant moves for summary judgment on all claims. *See* Mot. at 8–13. Plaintiff contends material disputes of fact preclude summary judgment for each claim. *See* Opp'n at 6–8. The court reviews the record on each claim below.

A. California Labor Code Section 1102.5

Defendant contends plaintiff has not established he engaged in "protected activity" under California Labor Code section 1102.5. Mot. at 7.

"California's general whistleblower statute," codified in section 1102.5, "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." *McVeigh v. Recology S.F.*, 213 Cal. App. 4th 443, 468 (2013) (internal citations omitted). Section 1102.5 provides, in relevant part,

> An employer . . . shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation. . .

Cal. Lab. Code § 1102.5(a).

To establish a prima facie case of whistleblower retaliation under section 1102.5, a plaintiff must show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two. *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 138 (2007). Defendant's motion attacks the first element of plaintiff's prima facie case, challenging whether he engaged in protected activity. Accordingly, the court reviews what "protected activity" means in this context.

"Protected activity" means disclosure of conduct the whistleblower reasonably believes amounts to a violation of state or federal law. *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1385 (2005), *see Edgerly v. City of Oakland*, 211 Cal. App. 4th

6

1191, 1202 (2012) ("[s]ection 1102.5 of the Labor Code requires that to come within its provisions, the activity disclosed by an employee must violate a federal or state law, rule or regulation); *Mueller v. Cty. of L.A.*, 176 Cal. App. 4th 809, 821 (2009) (same).

In *Patten*, for example, the California Court of Appeals concluded a jury could find a school principal engaged in protected activity by disclosing the school's unauthorized use of public assets to state legislators. *Patten*, 134 Cal. App. 4th at 1385. The disclosure of this conduct, juxtaposed with plaintiff's belief that the school's expenditures were illegitimate, raised a triable issue of fact regarding protected activity. *Id.* On the other hand, "protected activity" did not encompass the following disclosures: (1) accusations to district superiors that a male physical education teacher was peering into the girls' locker room, (2) accusations to superiors that the male science teacher made certain off-color remarks, or (3) requests for additional staff to keep the campus safe. *Id.* at 1382. These disclosures, although made by a government employee to a government agency, "indisputably encompassed only the context of internal personnel matters involving a supervisor and her employee, rather than the disclosure of a legal violation." *Id.* at 1384–85. Because these disclosures were made in an exclusively internal administrative context, they did not show a belief on the principal's part that she was disclosing a "violation of state or federal law in any sort of whistleblowing context, as required for a section 1102.5[] whistleblowing action." *Id.* at 1385. Summary judgment was denied in part. *Id.* at 1391.

Here, plaintiff contends defendant's new system, which was designed to report California smog data to the BAR, was defective and lacking in capacity to manage the "thousands of smog transactions which occur in California on a daily basis." Opp'n at 3–4. Plaintiff further contends he engaged in protected activity by repeatedly voicing his concerns to "his managers" about deficiencies in the CalVis system. *Id.* at 7. Plaintiff cites no evidence showing he "voiced concerns" about the CalVis system to anyone, and the court need not comb the record for a reason to deny summary judgment. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009).

Even if plaintiff had produced evidence of his complaints, he has not identified any violation of law of which he complained. Plaintiff's complaints are more akin to "internal personnel matters . . . rather than the disclosure of a legal violation." *Patten*, 134 Cal. App. 4th

7

at 1384–85. Even construing any evidence in plaintiff's favor, no reasonable jury could find plaintiff engaged in "protected activity" within the meaning of section 1102.5. Summary judgment is GRANTED on this claim.

B. <u>California False Claims Act Retaliatory Termination</u>

Defendant contends that summary judgment is warranted on this claim because plaintiff has not established "protected activity" within the meaning of the California False Claims Act (CFCA). Mot. at 11. Plaintiff contends his "repeated efforts to help his employer avoid having a system that failed" constitute "protected activity," precluding a grant of summary judgment. Opp'n at 7.

To sustain a retaliation claim under the CFCA, the plaintiff must point to evidence showing (1) he was engaged in protected activity; (2) the employer knew he was engaged in such conduct; and (3) the employer retaliated against him because of the conduct. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (discussing California False Claims Act). To establish "protected activity," the plaintiff must show he in good faith believed, and a reasonable employee in the same or similar circumstances might believe, the employer is possibly committing fraud against the government. *Id.*; *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 846 (9th Cir. 2002). Because the Ninth Circuit looks to the federal False Claims Act to assess the California analog, *see Mendiondo*, 521 F.3d at 1104, this court looks to Ninth Circuit decisions based on the federal False Claims Act to determine the showing needed to establish "protected activity."

In *Moore*, the Ninth Circuit held that where a government contractor submitted for payment a report omitting information directly contradicting a claim made to the government, the plaintiff engaged in "protected activity" by submitting a false claims complaint against the contractor to the government Inspector General's Office. 275 F.3d at 845–46. The plaintiff's employer then proposed to eliminate plaintiff's job title and transfer him to another group without allowing him to complete several long-term projects. *Id.* at 842. From this, the court concluded a jury could find the plaintiff had a good faith and reasonable belief that the defendant was attempting to defraud the government in violation of the federal False Claims Act. *Id.* The court

8

also concluded a jury could find the employer's "proposed" acts were "reasonably likely to deter employees from engaging in activity protected under the False Claims Act," and thereby could find retaliatory conduct. *Id.* at 848. Accordingly, the plaintiff could proceed to trial with his False Claims Act retaliation claim. *Id.*

Here, by contrast, plaintiff's "repeated efforts to help his employer avoid having a system that failed" does not constitute protected activity. *See* Opp'n at 7. Plaintiff does not articulate or otherwise establish circumstances substantiating his belief that fraudulent activity was afoot. While plaintiff points to defects in defendant's system, at no point in his recitation of material facts does plaintiff identify defendant's submission of a false claim to the government or other incidents of fraud against the government. *Mendiondo*, 521 F.3d at 1104. The SGS system outages—a purported consequence of not heeding plaintiff's "repeated efforts"—do not raise plaintiff's conduct to the level of "protected activity." *Tribble v. Raytheon Co.*, 414 F. App'x 98, 99 (9th Cir. 2011) (plaintiff's statement that company product has "latent defect" without more, did not rise to level of "protected activity").[5]

Summary judgment is GRANTED on this claim.

C. <u>Wrongful Termination in Violation of California Public Policy</u>

Plaintiff's claim of wrongful termination in violation of public policy is based only on his claims under section 1102.5 and the CFCA, FAC ¶ 44, neither of which have survived. Accordingly, the derivative public policy claim must fail as well. *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017) (district court's determination that defendant did not violate Labor Code section 1102.5 foreclosed plaintiff's public policy claim based on a violation of section 1102.5 as a matter of law); *Tribble*, 414 F. App'x at 99 (public policy claim precluded where FCA claim dismissed).

Summary judgment is GRANTED on this claim.

---

[5] This Ninth Circuit holding is persuasive, although not binding, on this court. Ninth Circuit Rule 36–3; *see also, e.g., Johnson v. Nevada ex rel. Bd. of Prison Comm'rs*, No. 11–00487, 2013 WL 5428423, at *7 (D. Nev. Sept.26, 2013) (under Ninth Circuit Rule 36–3, unpublished Ninth Circuit opinions have "only persuasive rather than authoritative or precedential value.").

D. <u>Section 1981 Racial Discrimination</u>

Finally, defendant moves for summary judgment on plaintiff's racial discrimination claim. Mot. at 12. In opposition, plaintiff states he has established the requisite showing, contending that defendant contravened its own "three-warning then termination" policy to keep a Caucasian co-worker after three warnings while firing plaintiff after only one. Opp'n at 5.

Under 42 U.S.C. § 1981, discrimination based on "ancestry or ethnic characteristics" is prohibited. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) (internal citations omitted). In analyzing plaintiff's race discrimination claim under § 1981, the court applies "the same legal principles as those applicable in a Title VII disparate treatment case." *Id.*

In a Title VII case, the court applies a burden shifting framework, whereby the plaintiff must first establish a prima facie case of discrimination, and the defendant must then articulate a "legitimate, nondiscriminatory reason for its allegedly discriminatory [or retaliatory] conduct." *Metoyer*, 504 F.3d at 931 n.6 (brackets in original). The plaintiff may then defeat summary judgment by satisfying the "usual standard of proof required" under Federal Rule of Civil Procedure 56(c). *Id.*

To establish a prima facie case of discrimination, the plaintiff may show: (1) he was a member of a protected class; (2) he was qualified for the position sought or was competently performing in the position held; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances suggesting a discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fonseca*, 374 F.3d at 850.

To satisfy the fourth element, a plaintiff may show "an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citing *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985)). Where, as here, the plaintiff's case "relies on a comparison between" himself and another racial group, plaintiff invokes a "similarly situated" theory of discrimination. *Id.* In such a case, the court need only focus on the asserted "inference of discrimination . . . central to

plaintiff['s] case" and need not look to any other circumstances "surrounding the adverse employment action [that] give rise to an inference of discrimination." *Id.* at 1156–57.

"Whether two employees are similarly situated is ordinarily a question of fact." *Id.* at 1157 (internal citations omitted). The employees' roles need not be identical; they must only be similar "in all material respects." *Id.* Generally, the Ninth Circuit has determined "individuals are similarly situated when they have similar jobs and display similar conduct." *Id.* (citing *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003)). In *Earl v. Nielsen Media Research, Inc.*, for example, employees were "similarly situated" where they repeatedly violated similar policies. 658 F.3d 1108, 1113 (9th Cir. 2011). In *Vasquez*, on the other hand, employees were not similarly situated where the type and severity of alleged offenses were dissimilar. 349 F.3d at 641.

With these standards in mind, the court assesses the evidence at bar, such as it is.

1. <u>Prima Facie Case</u>

Here, plaintiff is a native of India, Pl.'s Dep. 221:4, is a racial minority, and is thereby part of a protected class for purposes of his claim, satisfying the first element, *McDonnell*, 411 U.S. at 800. Regarding the competent performance prong, plaintiff contends his superiors consistently recognized him as highly qualified and productive, Opp'n at 3, but cites to no supporting evidence. Even assuming plaintiff satisfied the second element, he cannot prevail as discussed below. It is not disputed that plaintiff satisfies the third prong of the prima facie showing; his termination amounts to an adverse employment action. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002).

Regarding the fourth prong, however, plaintiff has not presented evidence from which a reasonable jury could conclude plaintiff's termination occurred under discriminatory circumstances. Plaintiff points to evidence showing a Caucasian co-worker remained employed after three warnings while plaintiff was fired after one. Pl.'s Dep. at 221:1–223:4. But plaintiff has produced no evidence showing his co-worker had a similar job, engaged in similar conduct, or violated similar rules, such that plaintiff's termination occurred under circumstances showing he was "similarly situated." *See Vasquez*, 349 F.3d at 641; *see Hawn*, 615 F.3d at 1152 (key

11

inquiry is whether "employees were similarly situated"). Plaintiff concedes he does not actually know the circumstances surrounding the three warnings the other employee received, or any details regarding SGS's decision to keep his co-worker. Pl.'s Dep. at 222:18–21. Plaintiff also concedes that while he worked at SGS he witnessed other Caucasian co-workers being fired, but he did not know the reasons underlying their termination. *Id.* at 229:12–19.

Belatedly, plaintiff has cited to the deposition testimony of David Waters, a software developer for SGS. Waters Dep. at 37:24–39:20, 62:23–65:22.[6] But this testimony does not establish that plaintiff and his co-worker were similarly situated, or that plaintiff was otherwise terminated under discriminatory circumstances. In the deposition excerpt, Waters discusses the effects system outages had on SGS and smog check stations. *Id.* at 37:24–39:20. In a second excerpt, Waters reviews another employee's termination after that employee caused a system outage. *Id.* at 62:23–65:22. If anything, this second excerpt undermines rather than bolsters plaintiff's position; that another employee was terminated the day after he caused system outages suggests plaintiff's termination was not an aberration. Moreover, nowhere in the record is the race of the other employee Waters mentions identified, meaning a jury would be left to speculate impermissibly regarding the circumstances surrounding that termination. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

The evidence before the court, taken as a whole, precludes a reasonable jury conclusion that plaintiff was subject to racial discrimination. Plaintiff has not raised a genuine dispute sufficient to leave open the possibility of his establishing a prima facie case.

2. <u>Defendant's Termination Reason</u>

Even if plaintiff has sufficiently established a prima facie case of discrimination to survive summary judgment in that respect, defendant argues three events indisputably supported its decision to fire plaintiff: (1) on May 29, 2014, plaintiff failed to address database errors over the holiday weekend while on call as a database administrator, Mot. at 6; (2) on August 7, 2014,

---

[6] Plaintiff presented this evidence for the first time at hearing. Because defendant had a chance to respond at hearing, *see* ECF No. 43, the court addresses this late offered evidence here. *See Wood v. Kinetic Sys.*, Inc., 766 F. Supp. 2d 1080, 1086 (D. Idaho 2011) (finding no error in allowing party's new argument when opposing party had opportunity to respond).

12

plaintiff caused a system outage lasting approximately five to ten minutes during peak hours because he mined database logs during a non-maintenance window in violation of defendant's policy, *id.*; (3) on August 12, 2014, plaintiff caused another system outage lasting approximately thirty minutes and during peak hours, *id.* at 7. Defendant contends the second outage was attributed to plaintiff's attempts to create a system fix upon instruction, but he then implemented the system fix without informing anyone or obtaining management approval. *Id.*

It is undisputed that plaintiff did not address database errors while on call on May 29, 2014; and that his conduct on August 7 and August 12 contributed, at least in part, to two system wide crashes. Pl.'s Dep. at 105:7–106:4; Marlow Decl. ¶¶ 8, 14. These crashes, in turn, precluded defendant from sending and receiving smog check certificates, which had the potential to result in monetary fines imposed by the BAR. Marlow Decl. ¶ 6. Defendant has presented "legitimate, nondiscriminatory reason[s] for its allegedly discriminatory [or retaliatory] conduct." *Metoyer*, 504 F.3d at 931 n.6. The burden thus shifts to plaintiff to establish evidence of pre-text. *Id.*

### 3. Evidence of Pretext

Once the defendant provides "some legitimate, nondiscriminatory reason for the challenged action," the plaintiff to prevail must show "the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Villiarimo*, 281 F.3d at 1062 (internal citations omitted). Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both "specific and substantial." *Id.* A showing that defendant treated similarly situated employees outside plaintiff's protected class more favorably would be probative of pretext. *Vasquez*, 349 F.3d at 641.

As recounted above, plaintiff has not established the Caucasian co-worker to whom he compares himself was similarly situated. Therefore, he must identify "specific and substantial" evidence persuading the court that defendant's explanation is unworthy of credence. *Villiarimo*, 281 F.3d at 1062.

13

Plaintiff points to evidence showing his supervisor Mike Earl, leader of the development team and a decision maker with respect to plaintiff's termination, was partially responsible for the August 12 system outage. Pl's Dep. at 147:14–148:13. At his deposition, plaintiff testified Earl added an inordinate amount of stations to the CalVis system without notifying plaintiff, which caused the system to shut down during peak hours. *Id.*

Plaintiff's limited evidence does not rebut defendant's explanation for his termination. Courts require only that "an employer honestly believe its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo*, 281 F.3d at 1063 (internal citations omitted). Plaintiff has not presented evidence that defendant did not believe its proffered reasons. *Id.* ("[plaintiff] presented no evidence that [defendant] did not honestly believe its proffered reasons."). In the absence of evidence of pretext or evidence that plaintiff was terminated while a "similarly situated" co-worker was not, summary judgment on this claim is GRANTED.

V.      SUMMARY AND CONCLUSION

Defendant's motion for summary judgment is GRANTED in full. This case is CLOSED.

This order resolves ECF Nos. 27 and 34.

IT IS SO ORDERED.

DATED: May 17, 2017.

_____
UNITED STATES DISTRICT JUDGE